Filed 9/3/21  Bordeaux v. State of Cal. Dept. of Child Support Services CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ADELAIDE BORDEAUX,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>STATE OF CALIFORNIA DEPARTMENT OF CHILD SUPPORT SERVICES et al.,<br><br>        Defendants and Respondents,<br><br>COUNTY OF SAN DIEGO,<br><br>        Real party in Interest and Respondent. | D076736<br><br><br>(Super. Ct. No. 37-2016-00000193-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Adelaide Bordeaux, in pro. per., for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Richard T. Waldow and Darin L. Wessel, Deputy Attorneys General, for Defendants and Respondents.

Erica R. Cortez, Deputy County Counsel, for Real party in Interest and Respondent.

## I.

## INTRODUCTION

Adelaide Bordeaux filed a petition for writ of administrative mandamus against respondents, Department of Child Support Services (the Department), and its director, David Kilgore.  In the operative second amended petition, Bordeaux sought review of the Department's final decision denying her complaint against real party in interest and respondent, San Diego County Department of Child Support Services (the County), pertaining to the County's pursuit of child support payments on behalf of one of Bordeaux's children, Q.B.[1]  The trial court entered an order denying Bordeaux's petition, and subsequently entered a judgment in favor of respondents.

Bordeaux, appearing in propria persona, appeals from the trial court's judgment.  We affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Bordeaux gave birth to Q.B. in 1993 in Maryland.  Q.B.'s birth certificate lists John Bordeaux (John) as his father.  In April 2003, in San Diego Superior Court, case No. 0730695025665 ("665 Case"), the County sought to obtain child support on behalf of Bordeaux from John for Q.B.[2]

---

1    Neither the petition, nor the operative second amended petition, is in the record.  We base our description on the trial court's order denying Bordeaux's petition.

2    Pursuant to Family Code section 17404, a local child support agency, such as the County, may bring an action " 'to establish, modify and enforce

2

According to a representative of the County, the 665 Case was closed in June 2006 because the County was unable to locate John.

In July 2011, when Q.B. was 17 years old, Bordeaux filed an application for child support services with the County requesting assistance in obtaining child support for Q.B. from Moses Nwaigwe, the father of Bordeaux's six other children. That same month, in response to Bordeaux's request, the County added Q.B. to a pending child support case against Nwaigwe in San Diego Superior Court, case No. 0730603719675 for Bordeaux's other children ("675 Case") and also sent an interstate petition packet to a state agency in Texas, the state in which Nwaigwe resided, in an effort to establish paternity and child support for Q.B. from Nwaigwe.

In December 2011, Texas informed the County that it would not pursue the matter because Q.B. had emancipated.[3] In 2014, the superior court dismissed the 675 Case based on a lack of jurisdiction.

In September 2014, Bordeaux filed a request for an administrative hearing against the County pertaining to its actions with respect to Bordeaux's child support services cases involving Q.B. (See § 17801 [providing a parent "who is dissatisfied with [a] local child support agency's resolution of a complaint," with an administrative hearing].) An administrative hearing officer held a hearing at which Bordeaux and a representative of the County, Crystal Norton, testified.

---

support obligations "in the name of the county on behalf of the child, children or caretaker parent." [Citation.]'" (*Wood v. Superior Court* (2020) 46 Cal.App.5th 562, 578.)

Unless otherwise specified, all subsequent statutory references are to the Family Code.

[3] Q.B. turned 18 in November 2011.

After the hearing, the hearing officer issued a decision denying Bordeaux's complaint in its entirety. In the decision, the hearing officer identified two issues for resolution:

> "1. Did [the County] provide proper notice to [Bordeaux] that it closed the case that sought child support payments for [Q.B.] from the asserted father, . . . Nwaigwe?

> "2. Did [the County] properly pursue [Bordeaux's] rights to child support payments related to . . . [Q.B.] from the asserted father, . . . Nwaigwe?"

The hearing officer resolved both issues in favor of the County, finding that the County provided proper notice to Bordeaux that it had closed the case seeking child support payments for Q.B. from Nwaigwe and that the County properly pursued Bordeaux's rights to child support payments for Q.B. from Nwaigwe. The Department adopted the hearing officer's decision as its final decision and order.[4]

Bordeaux sought review of the Department's decision by way of a petition for writ of administrative mandamus. (See § 17803 [authorizing a parent to file a petition for writ of mandamus to review the Department's final decision concerning parent's child support services complaint].)

In September 2019, the trial court entered an order denying the operative second amended petition. The trial court concluded that there was substantial evidence to support the Department's findings and decision. The trial court subsequently entered a judgment in favor of respondents.

Bordeaux timely appeals from the judgment.

---

4       The Department revised the hearing officer's proposed decision in a manner that is not relevant to this appeal.

4

III.

DISCUSSION

*Bordeaux has not demonstrated that the trial court erred in denying her petition for writ of administrative mandamus*

Bordeaux claims that the trial court erred in denying her petition for writ of administrative mandamus. She appears to raise two arguments in support of this claim. First, Bordeaux contends that the County failed to provide her with proper notice of the closing of the 665 Case and the fact that the County was adding Q.B. to the 675 Case. Second, Bordeaux contends that the County failed to comply with its legal obligations in seeking to obtain child support from Nwaigwe on behalf of Q.B.[5]

We first outline the law governing Bordeaux's appeal before considering each of Bordeaux's arguments for reversal.

A. *Governing law*

1. *Substantive law governing the review of a parent's complaint with respect to a local child support agency's action*

Section 17801 provides in relevant part:

> "(a) A custodial or noncustodial parent who is dissatisfied with the local child support agency's resolution of a complaint shall be accorded an opportunity for a state hearing when one or more of the following actions or failures to take action by the [D]epartment or the local child support agency is claimed by the parent:

---

[5] The arguments presented in Bordeaux's brief are extremely difficult to follow and contain numerous citations that do not conform to California Rules of Court, rule 8.204's requirement that each appellate brief "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).)

We have endeavored to discern Bordeaux's arguments and to address those arguments in this opinion.

5

"[¶] . . .[¶]

"(2) The child support services case has been acted upon in violation of state or federal law or regulation or [D]epartment letter ruling, or has not yet been acted upon within the required timeframe, including services for the establishment, modification, and enforcement of child support orders and child support accountings.

"[¶] . . .[¶]

"(4) The child support agency's decision to close a child support case."

Section 17803 provides that a parent may file a petition for writ of administrative mandamus for review of a case subject to section 17801.  The statute provides in relevant part:

"The custodial or noncustodial parent, within one year after receiving notice of the [Department] director's final decision, may file a petition with the superior court, under Section 1094.5 of the Code of Civil Procedure,[6] praying for a review of the entire proceedings in the matter, upon questions of law involved in the case."

2. *Administrative mandamus*

"Code of Civil Procedure section 1094.5, the state's administrative mandamus provision, provides the procedure for judicial review of adjudicatory decisions rendered by administrative agencies.  [Citation.] Pursuant to Code of Civil Procedure section 1094.5, subdivision (b), '[t]he inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair

_____

6    As discussed in part III.A.2, *post*, Code of Civil Procedure section 1094.5 outlines the law governing petitions for writ of administrative mandate.

6

trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.' " (*Young v. City of Coronado* (2017) 10 Cal.App.5th 408, 418 (*Young*).)

    3.  *Standard of review and an appellant's burden on appeal to demonstrate error*

"Where, as here, the underlying administrative mandamus case does not involve a fundamental vested right,[7] on appeal ' "we review the administrative decision, not the superior court's decision." ' ([Citation]; see *Dore v. County of Ventura* (1994) 23 Cal.App.4th 320, 327 (*Dore*) ['Our role [on appeal] is to consider whether the administrative agency committed a prejudicial abuse of discretion by examining whether the findings support the agency's decision and whether substantial evidence supports the findings in light of the whole record'].)" (*Young, supra,* 10 Cal.App.5th at pp. 418–419.) " '[T]he petitioner in an administrative mandamus proceeding has the burden of proving that the agency's decision was invalid and should be set aside, because it is presumed that the agency regularly performed its official duty. When the standard of review is the substantial evidence test . . . it is presumed that the findings and actions of the administrative agency were supported by substantial evidence. [Citations.] Thus, since the same standard of review applies now on appeal as [it] did in the trial court, the burden is on appellant to show there is no substantial evidence whatsoever to support the findings of the [agency.]' (Citation.]" (*Id.* at p. 419.)

---

7    No party argues that the County's provision of child support services involves a fundamental vested right.

B. *Bordeaux is not entitled to reversal based on the County's alleged failure to provide her with proper notice of the closing of the 665 Case; there is substantial evidence that the County provided notice to Bordeaux that it was adding Q.B. to the 675 Case*

Bordeaux raises two claims based on the County's purported failure to provide her with notice as to its actions in her child support cases. First, Bordeaux claims that the County failed to provide her with proper notice of the closing of the 665 Case. Second, Bordeaux claims that there is not substantial evidence in the record that the County provided notice to Bordeaux that it was adding Q.B. to the 675 Case. We consider each argument in turn.

1. *Bordeaux is not entitled to reversal based on the County's alleged failure to provide her with notice of the closing of the 665 Case*

Bordeaux argues that the County failed to "provided [her] with proper notice of closing of [the 665 Case]." Specifically, Bordeaux contends that the County "allegedly closed [665 Case] on June 6, 2006 with no notice provided to [her]."

a. *Governing law*

California Code of Regulations, title 22, section 118203, subdivision (b) provides generally that "[a] local child support agency shall notify the recipient of services in writing when closing a case . . . ."[8]

b. *The Department's findings*

"[The 665 Case] was first opened on April 1, 2003, only for [Q.B.]. When the [665 Case] was opened, John . . . was

---

[8] The regulatory scheme sets out a detailed set of circumstances pertaining to when such notice *is* and *is not* required. (Cal. Code. Regs., tit. 22, § 118203, subd. (b).) We need not discuss this scheme in detail because we conclude that Bordeaux fails to establish any basis for reversal *even assuming that the County failed to provide her with proper notice of the closing of case No. 665.* (See p.t III.B.1.c, *post*.)

listed as [Q.B.'s] father and the case sought to obtain child support from John . . . . According to Ms. Norton[,] the [665 Case] was closed on June 6, 2006, because after three years the [County] was not able to locate John . . . . However, no evidence was introduced that [Bordeaux] was ever given notice that the [665 Case] was closed."

The Department also determined:

"The evidence demonstrated that the [County] properly closed the [665 Case] seeking child support from John . . . for [Q.B.] . . . . [The County] made diligent attempts to locate John . . . , but was unable to do so after three years. But, [the County] failed to establish that it provided notice to [Bordeaux] that the [665 Case] was closed as required by California Code of Regulations, title 22, section 118203, [subdivision] (b). *This failure to notify [Bordeaux] of the closure of the [665 Case], however, is not at issue in this matter because the [665 Case] does not involve . . . Nwaigwe, but involves John . . . . [Bordeaux] now asserts that the actual father of [Q.B.] is Moses Ogu Nwaigwe, not John . . . .*" (Italics added.)

c. *Bordeaux is not entitled to reversal on the ground that the County failed to provide her with notice of the County's closure of the 665 Case because Bordeaux claims that Nwaigwe is Q.B.'s father and Nwaigwe was never a defendant in the 665 Case*

In its final decision, the Department found that the 665 Case involved John and never involved Nwaigwe. There is substantial evidence to support these findings,[9] and Bordeaux points to no contrary evidence. (See *Young,*

---

[9] Specifically, Norton testified that the County opened the 665 Case in 2003 and closed that case in 2006 when the County was unable to locate John. Immediately thereafter, the hearing officer asked Norton, "Was that case [case No. 665] reopened in 2011 when Ms. Bordeaux filed a new application?" Norton responded, "No. Because she named . . . Nwaigwe as the father, not [John]." Based on this testimony, the Department could reasonably find that case No. 665 involved John, and not Nwaigwe.

*supra,* 10 Cal.App.5th at pp. 418–419 [in reviewing petition for writ of administrative mandamus, reviewing court determines whether " 'substantial evidence supports the findings in light of the whole record' "].) In addition, it is undisputed that Bordeaux claims that Nwaigwe is Q.B.'s father, and that Bordeaux sought child support services from the County to obtain child support from *Nwaigwe.*[10] We therefore conclude that the Department's findings that the 665 Case involved *John* and never involved *Nwaigwe* support the Department's conclusion that any error by the County in failing to provide Bordeaux notice of closure of the 665 Case in 2006 involving *John* was irrelevant and provided no basis for relief because Bordeaux claims that *Nwaigwe*, not John, is Q.B.'s father. (See *Young, supra*, at pp. 418–419 [in reviewing petition for writ of administrative mandamus, reviewing court determines whether " 'the findings support the agency's decision' "].)

2. *There is substantial evidence to support the Department's finding that the County provided Bordeaux with notice that it was adding Q.B. to the 675 Case*

Bordeaux claims that the County failed to "provide[ ] [her] adequate notice of adding [Q.B.] to [675 Case]."[11]

a. *The Department's findings*

The Department made the following findings pertaining to the County's pursuit of Bordeaux's request for child support from Nwaigwe in the 675 Case:

---

10    In her request for an administrative hearing, Bordeaux referred to Nwaigwe as "the father," and "the defendant" in her child support case.

11    We assume for purposes of this opinion that the County was obligated to provide Bordeaux such notice. (See generally Cal. Code. Regs., tit. 22, § 112130 [outlining a local child support agency's obligations when opening a child support case].)

10

"On July 13, 2011, [Bordeaux] filed an application for child support services with [the County] seeking child support from Mr. Nwaigwe for [Q.B.] and asserting that he was the father of [Q.B.]  Thereafter, the [County] pursued this child support case against Mr. Nwaigwe by adding [Q.B.] to the [675 Case], which was open at the time.  On July 21, 2011, the [County] sent an interstate petition packet to Texas in an effort to establish paternity and child support from Mr. Nwaigwe.

"[Bordeaux] said that she understood that her application for child support services filed on July 13, 2011, was part of the [*665 Case*] because it related only to [Q.B.]  However, documents show that on August 3, 2011, [Bordeaux] . . . executed at least two documents seeking child support enforcement for [Q.B.] from Mr. Nwaigwe and the case number listed on each page of those documents was the [*675 Case*]."  (Italics added.)

The Department also described in detail the documents that the County offered in evidence tending to show that Bordeaux had notice that the County was pursuing her request for child support from Nwaigwe in the 675 Case:

"[The County] provided documentation related to [Bordeaux's] July 13, 2011, application seeking child support services for [Q.B.] from Mr. Nwaigwe; [Bordeaux's] initial request for child support enforcement against Mr. Nwaigwe for [Q.B.] dated August 3, 2011, containing [Bordeaux's] signature and the case number of the [675 Case]; and a General Testimony document filled out and executed by [Bordeaux] on August 3, 2011, related to her application against Mr. Nwaigwe for [Q.B.] marked on each page with the [675 Case] number.  [The County] also provided a copy of the affidavit in support of establishing paternity from Mr. Nwaigwe for [Q.B.] executed on August 3, 2011, and containing on each page the [675 Case] number."

11

b. *There is substantial evidence to support the Department's finding that the County provided adequate notice to Bordeaux that it was adding Q.B. to 675 Case*

As recounted in the Department's decision, the County offered in evidence three notarized documents bearing the case number for the 675 Case, signed by Bordeaux, related to Bordeaux's request for child support from Nwaigwe for Q.B. (See pt. III.B.2.a, *ante*.) These documents constitute substantial evidence to support the Department's finding that the County provided adequate notice to Bordeaux that it was adding Q.B. to 675 Case. (See *Young, supra*, 10 Cal.App.5th at pp. 418–419 [outlining substantial evidence standard of review].)

C. *Bordeaux has not demonstrated that the County failed to comply with its legal obligations in seeking to obtain child support from Nwaigwe on behalf of Q.B.*

Bordeaux claims that the County failed to properly pursue her request for child support payments for Q.B. from Nwaigwe.

1. *Relevant law*

California Code of Regulations, title 22, section 117400, outlines a local child support agency's responsibilities in a case in which a noncustodial parent resides in a state other than California.[12] The regulation provides in relevant part:

> "(a) A local child support agency shall establish paternity, and establish and enforce support orders when the noncustodial parent resides in a state other than California and the custodial party resides in California . . . .

> "(b) A local child support agency shall:

---

[12] As discussed in part C.3, *post*, Nwaigwe resides in Texas.

12

"(1) Use long arm jurisdiction when establishing judgments of parentage and child support orders . . . .

"(2) Initiate an interstate case action if utilization of long arm jurisdiction is not possible."

2.   *The Department's findings*

The Department found that the County properly pursued Bordeaux's request for child support payments related to Q.B. from Nwaigwe, stating:

"The evidence established that the paternity for [Q.B.] was unclear and needed to be established by [the County].  The evidence demonstrated that the Superior Court of California, County of San Diego dismissed the [675 Case] based upon a lack of personal jurisdiction over Moses Ogu Nwaigwe.  This court lacks jurisdiction to overturn the superior court's order.[13]  The evidence also established that [the County] initiated and pursued an interstate case with Texas requesting that Texas establish paternity and child support order from Mr. Nwaigwe on behalf of [Bordeaux] for [Q.B.].  [The County] thus took all possible steps available to it under California Code of Regulations, title 22, section 117400, to pursue the establishment of paternity and child support from Mr. Nwaigwe on [Bordeaux's] behalf for [Q.B.]"

---

13    We understand this to be a reference to the fact that the hearing officer and the Department lack the authority to overturn a superior court's child support order.  (See § 17801, subd. (g) ["A child support determination that is subject to the jurisdiction of the superior court and that is required by law to be addressed by motion, order to show cause, or appeal under this code shall not be subject to a state hearing under this section"].)

13

3. *There is substantial evidence to support the Department's findings that the County properly pursued Bordeaux's request for child support payments related to Q.B. from Nwaigwe; Bordeaux fails to demonstrate that the County acted improperly*

There is substantial evidence to support the Department's findings that the County properly pursued Bordeaux's request for child support payments for Q.B. from Nwaigwe.

With respect to the County's need to establish Q.B.'s paternity, Norton testified at the administrative hearing that in order to obtain child support from a person alleged to be a child's father, the County is required to first establish paternity. Norton stated that if paternity cannot be established via a birth certificate, the County is required to obtain a court order establishing such paternity. Norton explained that because John is listed as the father on Q.B.'s birth certificate[14] and the County was seeking to establish Nwaigwe as Q.B.'s actual father, the County needed a court order establishing Nwaigwe's paternity as to Q.B. Norton also explained that, because Nwaigwe resided in Texas,[15] the County attempted to obtain such an order from that state.

The County also presented evidence that, in August 2011, the County submitted a child support enforcement request to a Texas agency, seeking to establish Nwaigwe's paternity with respect to Q.B. and to obtain an order for

---

[14]    The record contains Q.B.'s birth certificate; John is listed as his father.

[15]    In her July 2011 application for child support services, Bordeaux checked boxes indicating that Nwaigwe had never lived or worked in California. In addition, in a document titled "General Testimony," attached to the interstate petition packet that the County sent to the Texas agency, Bordeaux provided Nwaigwe's home and work addresses, both of which were in Texas.

child support.[16] Norton stated that the County received notification from a Texas case worker on December 9, 2011 that Texas would "not [be] able to proceed with establishment of paternity and child support," because John was listed on the birth certificate and Q.B. had reached the age of emancipation.[17]

Norton further stated that, upon receiving Bordeaux's request, the County added Q.B. to an open California child support case against Nwaigwe in August 2011—the 675 Case.[18] As noted in part III.B.2.b, *ante*, the administrative record contains documents signed and notarized by Bordeaux that contain the case number for the 675 Case. In addition, the administrative record contains a February 20, 2014 minute order dismissing the 675 Case against Nwaigwe, in which the superior court found that it lacked jurisdiction over the case. The minute order states in relevant part:

> "The Court found that this Court had no jurisdiction; therefore[,] this Court has no jurisdiction over the request for reimbursement.
>
> "The case is dismissed. A request by [Nwaigwe] for relief *would* amount to a general appearance.[[19]]" (Italics added.)

---

[16]    In its final decision, the Department referred to this request as "an interstate petition packet." (See pt. III.B.2.a, *ante*.)

[17]    We quote from Norton's testimony. As noted in part II, *ante*, Q.B. turned 18 in November 2011.

[18]    Norton stated that the 675 Case initially involved children other than Q.B.

[19]    There is no evidence that Nwaigwe, *in fact*, sought relief in the 675 Case.

15

Thus, in sum, the record contains evidence that in 2011, when Q.B. was 17 years old, the County responded to Bordeaux's request for assistance in obtaining child support from Nwaigwe for Q.B., by adding Q.B. to a pending child support case against Nwaigwe involving Bordeaux's other children, in San Diego Superior Court, i.e., the 675 Case,[20] and also sending an interstate petition packet to a state agency in Texas, the state in which Nwaigwe resided. In light of the evidence that Q.B.'s paternity was unclear, and that Nwaigwe resided in Texas, we conclude that this evidence supports the Department's determination that the County acted appropriately in seeking to obtain child support from Nwaigwe on Q.B.'s behalf.

Bordeaux's arguments to the contrary are not persuasive. Bordeaux appears to argue that the County failed to ensure that Texas authorities acted promptly on her child support request.[21] Texas acted on Bordeaux's request within six months of receiving Bordeaux's application, which, as noted *ante*, Bordeaux filed when Q.B. was 17 years old. We are unaware of any authority to support Bordeaux's contention that six months is an unreasonable amount of time within which to act upon her request. In any event, we are not aware of any authority, and Bordeaux cites none, for the proposition that the County had any ability to influence the time within which the Texas agency acted upon Bordeaux's request. Bordeaux also argues that the County "failed to register their child support case with the

---

[20] As noted in part II, *ante*, the superior court determined in 2014 that it did not have jurisdiction over Nwaigwe.

[21] Bordeaux argues, "no 10 days, 30 days, nor 90 days should have elapsed before working on [her] case," and that the County should have "communicate[d] to Texas that there is no need to locate anyone because there is an ongoing case with the father [Nwaigwe] for his other [six] kids for about a decade now."

16

central registry," but she fails to provide any legal or factual support for this assertion.

In addition, Bordeaux appears to contend that the County could have presented additional arguments to a California court in an attempt to have Nwaigwe's paternity over Q.B. and child support obligations for Q.B. determined in California.[22]  In particular, Bordeaux refers to federal regulations that encourage states to adopt "[p]rocedures under which the voluntary acknowledgment of paternity creates a rebuttable or, at the option of the State, conclusive presumption of paternity, and under which such voluntary acknowledgment is admissible as evidence of paternity." (45 C.F.R. § 302.70(a)(5)(iv).)  This argument fails for two reasons.  First, there is no evidence to support the conclusion that California courts ever had jurisdiction over Nwaigwe such that the County could have obtained an adjudication of a voluntary acknowledgement in a California court.  Second, Bordeaux does not demonstrate that there is evidence that Nwaigwe voluntarily acknowledged paternity of Q.B. in a manner sufficient to establish paternity under California law.[23]

Accordingly, we conclude that there is substantial evidence to support the Department's findings that the County properly pursued Bordeaux's request for child support payments from Nwaigwe on Q.B.'s behalf.

---

[22]    As noted in part II, *ante*, in February 2014, a California court determined that it lacked jurisdiction and dismissed the 675 Case.  The court's ruling was binding on the Department.  (See fn. 13, *ante*.)

[23]    Bordeaux does not demonstrate that the statement "Mr. Nwaigwe *believes* he is the [father] and is willing to have a blood test to *confirm*," (italics added) which is contained in several documents from a 1995 dependency case involving Q.B., proves Nwaigwe's paternity, particularly in view of the fact that Q.B.'s birth certificate lists John as the father.

17

## IV.

## DISPOSITION

The judgment is affirmed.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

DATO, J.